ORIGINAL

Approved: _____
ANDREW K. CHAN / MATHEW ANDREWS
Assistant United States Attorneys

Before:  THE HONORABLE SARAH NETBURN
         United States Magistrate Judge
         Southern District of New York

22 MAG 2211

- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :    **SEALED COMPLAINT**
                                  :
        - v. -                    :    Violation of
                                  :    18 U.S.C. § 1956(h)
STANISLAV YAKUBOV,                :    COUNTY OF OFFENSE:
    a/k/a "Steve,"                :    NEW YORK
                                  :
                Defendant.        :
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

ANTOINETTE GUZMAN, being duly sworn, deposes and says that she is a Special Agent with the U.S. Attorney's Office for the Southern District of New York ("SDNY"), and charges as follows:

COUNT ONE
(Money Laundering Conspiracy)

1. From at least in or about October 2019 up to and including at least in or about November 2020, in the Southern District of New York and elsewhere, STANISLAV YAKUBOV, a/k/a "Steve," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to: (1) commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and (2) engage in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

2. It was a part and an object of the conspiracy that STANISLAV YAKUBOV, a/k/a "Steve," the defendant, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, Hobbs Act robberies in violation of Title 18, United States Code, Section 1951, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

3. It was further a part and an object of the conspiracy that STANISLAV YAKUBOV, a/k/a "Steve," the defendant, and others known and unknown, knowingly would and did engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, Hobbs Act robberies in violation of Title 18, United States Code, Section 1951, in violation of Title 18, United States Code, Section 1957.

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with SDNY. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, and conversations that I have had with other law enforcement agents and individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are

reported in substance and in part, except where otherwise indicated.

5.  Based on my review of law enforcement reports and conversations with other law enforcement officers, I know that STANISLAV YAKUBOV, a/k/a "Steve," the defendant, is a jeweler who sells watches, necklaces, and other types of jewelry at a jewelry store in the Jamaica Colosseum Mall in Queens, New York.

6.  Since 2020, I and other law enforcement agents have been investigating a robbery crew that committed a series of armed robberies between in or around the Fall of 2019 and the Fall of 2020 targeting jewelers and other owners of luxury watches in the New York City metropolitan area.  As further described below, law enforcement has identified STANISLAV YAKUBOV, a/k/a "Steve," the defendant, as a "fence" who knowingly entered into transactions with the perpetrators of the robberies in which YAKUBOV purchased the stolen jewelry for cash.

### The Robberies

7.  Based on my involvement in this investigation, my review of law enforcement reports, and my conversations with other people, including law enforcement agents, I have learned the following regarding a series of robberies in the New York City metropolitan area between in or around the Fall of 2019 and the Fall of 2020:

a.  On or about October 3, 2019, at approximately 11:00 a.m., a jeweler based in the Diamond District of Manhattan ("Victim-1") was robbed in Long Island City, New York by two men wearing dark clothing who punched Victim-1, threatened Victim-1, and kicked Victim-1 multiple times (the "October 2019 Robbery-1").  A Richard Mille brand watch worth approximately $250,000 and a diamond chain worth approximately $35,000 owned by Victim-1's business was taken during the robbery.

b.  On or about October 25, 2019, at approximately 7:45 p.m., a jeweler based in the Diamond District of Manhattan ("Victim-2") was robbed in Queens, New York by two men displaying firearms (the "October 2019 Robbery-2").  A Rolex brand watch worth approximately $150,000 owned by Victim-2's business was taken during the robbery.

c. On or about December 10, 2019, at approximately 7:40 p.m., a jeweler based in the vicinity of Canal Street in Manhattan ("Victim-3") was robbed in Brooklyn, New York by two men displaying firearms (the "December 2019 Robbery"). A Patek Philippe watch worth approximately $160,000, a diamond necklace worth approximately $77,000, and a diamond bracelet worth approximately $28,000 owned by Victim-3's business were taken during the robbery.

d. On or about January 14, 2020, at approximately 10:25 p.m., a jeweler based in the Diamond District of Manhattan ("Victim-4") was robbed in Queens, New York by two men displaying a firearm (the "January 2020 Robbery"). A Richard Mille watch worth approximately $500,000 owned by Victim-4's business was taken during the robbery.

d. On or about February 16, 2020, at approximately 12:35 a.m., a jeweler based in the Diamond District of Manhattan ("Victim-5") was robbed in Queens, New York by two men displaying weapons (the "February 2020 Robbery-1"). An Automar Paget watch worth approximately $28,000 owned by Victim-4's business was taken during the robbery.

e. On or about February 20, 2020, at approximately 10:15 p.m., an individual ("Victim-6") was robbed in Long Island City, New York by two men displaying a firearm (the "February 2020 Robbery-2"). An Automar Paget watch worth approximately $125,000 was taken during the robbery.

f. On or about July 6, 2020, at approximately 7:10 p.m., a jeweler based in the Diamond District of Manhattan ("Victim-7") was robbed in Hoboken, New Jersey by a man displaying a weapon (the "July 2020 Robbery"). A Richard Mille watch worth approximately $81,000 was taken during the robbery.

g. On or about August 2, 2020, at approximately 8:19 p.m., a food critic and social media influencer ("Victim-8") was robbed in Fort Lee, New Jersey by two men displaying a firearm (the "August 2020 Robbery"). A Richard Mille watch worth approximately $250,000 owned by Victim-6's business was taken during the robbery.

4

## YAKUBOV's Participation in Money Laundering

8. Based on my involvement in this investigation, I know that in or around November 2020, law enforcement agents arrested an individual suspected to be responsible for one or more of the robberies described above ("CW-1").[1] CW-1 has informed law enforcement of the following, in substance and in part:

a. Prior to CW-1's arrest, CW-1 was a member of a robbery crew that was responsible for a series of robberies matching the descriptions of the October 2019 Robbery-1, the October 2019 Robbery-2, the December 2019 Robbery, the January 2020 Robbery, the February 2020 Robbery-1, the February 2020 Robbery-2, and the August 2020 Robbery. Many of these robberies involved surveillance of the victims in Manhattan, as well as the transportation or storage of proceeds from the robberies in Manhattan.

b. CW-1 personally participated in the October 2019 Robbery-1 with a co-conspirator not named herein ("CC-1"). Following the October 2019 Robbery-1, CW-1 and CC-1 were introduced to a jeweler in the Jamaica Colosseum Mall named "Steve." CW-1 has identified a photograph of STANISLAV YAKUBOV, a/k/a "Steve," the defendant, as "Steve." YAKUBOV suggested that YAKUBOV knew that the watch had come from a recent robbery but did not care and was willing to buy it. YAKUBOV then gave CW-1 and CC-1 a bag containing approximately $84,000 in cash in exchange for the stolen watch. YAKUBOV also provided YAKUBOV's phone number to CW-1 and CC-1 for future transactions. During this transaction, YAKUBOV did not provide any receipts or invoices to CW-1 or CC-1. YAKUBOV also did not request that CW-1 or CC-1 provide any packaging, warranty, or proof that CW-1 and CC-1 had legitimately obtained the watch.

---

[1] Following CW-1's arrest, CW-1 pleaded guilty to, among other things, Hobbs Act Robbery conspiracy and money laundering conspiracy, and is now cooperating with law enforcement in the hopes of obtaining leniency with respect to eventual sentencing. Information provided by CW-1 has proven reliable and has been corroborated by, among other things, phone records, cell site location information, information provided by other witnesses, and text messages from CW-1's cellphones.

    c. CW-1 personally participated in the October 2019 Robbery-2 with CC-1. Following the October 2019 Robbery-2, CW-1 and CC-1 went to the Jamaica Colosseum Mall, where CW-1 sold the stolen watch to YAKUBOV in exchange for approximately $34,000 in cash.

    d. CW-1 personally participated in the December 2019 Robbery with CC-1 and another co-conspirator not named herein ("CC-2"). Following the December 2019 Robbery, CW-1 went to the Jamaica Colosseum Mall, where CW-1 sold the stolen watch to YAKUBOV in exchange for approximately $60,000 in cash.

    e. CW-1 did not personally participate in the January 2020 Robbery, but CC-1 told CW-1 that CC-1 was responsible for the January 2020 Robbery. CC-1 stated that CC-1 took the watch stolen during the January 2020 Robbery to YAKUBOV, but YAKUBOV was unwilling to purchase the watch because of concerns with being caught by law enforcement.

    f. CW-1 did not personally participate in the February 2020 Robbery-1, but CC-1 told CW-1 that CC-1 was responsible for the February 2020 Robbery-1. CC-1 later told CC-1 that YAKUBOV purchased the stolen watch from CC-1.

    g. CW-1 did not personally participate in the February 2020 Robbery-2, but CC-1 told CW-1 that CC-1 was responsible for the February 2020 Robbery-2. CC-1 told CW-1 that CC-1 brought the watch to YAKUBOV, but YAKUBOV was unwilling to purchase the watch because of concerns with being caught by law enforcement. CC-1 later sold the watch to another fence, but CW-1 and CC-1 later attempted to buy back the watch and to try to resell it to YAKUBOV for approximately $75,000. YAKUBOV only offered CW-1 and CC-1 approximately $60,000, and so the transaction did not occur.

    h. CW-1 personally participated in the August 2020 Robbery with CC-1. Following the August 2020 Robbery, CC-1 and CW-1 drove to YAKUBOV's home in Queens and rang the doorbell. YAKUBOV told CW-1 and CC-1 that YAKUBOV had recently been questioned by law enforcement. YAKUBOV instructed CW-1 and CC-1 to come to the Jamaica Colosseum Mall the next day if CW-1 and CC-1 were interested in selling the watch to YAKUBOV. CW-1 and CC-1 ultimately sold the watch to another fence. Based on my review of surveillance video from YAKUBOV's home, I know that CC-1 is depicted ringing the doorbell to YAKUBOV's home shortly

6

after the August 2020 Robbery. YAKUBOV is then depicted in the video speaking with CW-1 and CC-1.

9. Based on my review of law enforcement reports, I know that STANISLAV YAKUBOV, a/k/a "Steve," the defendant, filed a police report in or around 2017 and reported that YAKUBOV's phone number ended with the last four digits 2542 (the "YAKUBOV 2542 Cellphone").

10. Based on my personal involvement in this investigation, I know that CW-1 was in possession of multiple cellphones on the date of his arrest, including a cellphone containing a text message sent to the YAKUBOV 2542 Cellphone (the "CW-1 Cellphone"). Based on my personal involvement in this investigation, I know that law enforcement searched the CW-1 Cellphone and found a text message sent to the YAKUBOV 2542 Cellphone stating: "I need at least 72 bro." Based on my training, experience, and participation in this investigation, it appears that CW-1 may be negotiating a price with YAKUBOV for a particular piece of jewelry that CW-1 was attempting to sell to YAKUBOV.

10. Based on my review of toll records and law enforcement records, I have identified several cellphone numbers temporarily used by CC-1 during the robberies described above, including, among others, a cellphone with last four digits 2601 (the "CC-1 2601 Cellphone"), a cellphone with last four digits 1336 (the "CC-1 1336 Cellphone"), and a cellphone with last four digits 0993 (the "CC-1 0993 Cellphone").[2]

10. Based on my review of toll records, I have learned the following, among other things:

    a. On or about December 11, 2019—the day after the December 2019 Robbery—the YAKUBOV 2542 Cellphone exchanged communications with both the CW-1 Cellphone and the CC-1 2601 Cellphone, consistent with CW-1 and CC-1's attempts to contact YAKUBOV to sell the watch stolen during the December 2019 Robbery.

---

[2] I and other law enforcement agents identified these cellphone numbers as belonging to CC-1 by conducting common call analyses comparing the call numbers with each of these phone numbers to each other and with a phone number that CC-1 provided to CC-1's parole officer in or around the Summer of 2020.

b.  On or about January 15, 2020—-the day after the January 2020 Robbery—-the YAKUBOV 2542 Cellphone exchanged communications with the CC-1 2601 Cellphone, consistent with CC-1's attempts to contact YAKUBOV to sell the watch stolen during the January 2020 Robbery.

c.  On or about February 16, 2020—-the day of the February 2020 Robbery-1—the YAKUBOV 2542 Cellphone received a call from the CC-1 1336 Cellphone at approximately 1:50 a.m., consistent with CC-1's attempts to contact YAKUBOV to sell the watch stolen during the February 2020 Robbery-1.

d.  Between on or about July 6, 2020—-the day of the July 2020 Robbery—-and on or about July 8, 2020, the YAKUBOV 2542 Cellphone exchanged communications with the CC-1 0993 Cellphone, consistent with CC-1's attempts to contact YAKUBOV to sell the watch stolen during the July 2020 Robbery.

11.  On or about March 24, 2021, I and other law enforcement officers executed a judicially-authorized search warrant at YAKUBOV's jewelry store at the Jamaica Colosseum Mall.  During the search, law enforcement officers observed numerous receipts and invoices relating to legitimate transactions for the sale and purchase of jewelry.  However, law enforcement officers did not find any documents, receipts, or invoices pertaining to the purchase or sale of jewelry matching the description of the jewelry stolen during the October 2019 Robbery-1, the October 2019 Robbery-2, the December 2019 Robbery, the January 2020 Robbery, the February 2020 Robbery-1, the February 2020 Robbery-2, the July 2020 Robbery, and the August 2020 Robbery.  Based on my training and experience, I know that individuals engaged in money laundering frequently do not maintain records of transactions involving stolen property to avoid law enforcement detection.

12.  Based on my conversations with YAKUBOV's supervisor at the Jamaica Colosseum Mall, I have learned that YAKUBOV was not authorized to purchase jewelry on behalf of the business.

13.  On or about October 20, 2020 and on or about March 24, 2021, I and other law enforcement agents interviewed STANISLAV YAKUBOV, a/k/a "Steve," the defendant.  During these interviews, YAKUBOV stated that he was aware that a number of

other jewelers had been victims of robberies between in or around the Fall of 2019 and in or around the Fall of 2020, but denied that YAKUBOV had purchased any stolen watches from those robberies. YAKUBOV claimed that CW-1 and CC-1 were customers from approximately three or four years ago, and CC-1 may have previously purchased jewelry from YAKUBOV. YAKUBOV claimed that CC-1 had contacted him by phone to sell a couple of Richard Mille Watches, but YAKUBOV did not purchase any watches from CC-1. YAKUBOV denied meeting with CW-1 and CC-1 at the Jamaica Colosseum Mall in 2019 or 2020. YAKUBOV denied speaking to CW-1 over the phone. Based on all the evidence described above, I believe that YAKUBOV was not truthful with law enforcement during these interviews.

WHEREFORE, deponent respectfully requests that an arrest warrant issue for STANISLAV YAKUBOV, a/k/a "Steve," the defendant, and that he be imprisoned, or bailed, as the case may be.

/s authorized electronic signature
_____
ANTOINETTE GUZMAN
Special Agent
United States Attorney's Office
Southern District of New York

Sworn to before me this
8th day of March, 2022

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK